UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| CHARLES HUNTLEY, | |
| Plaintiff, | |
| v. | CAUSE NO.: 3:18-CV-205-PPS-MGG |
| WEXFORD HEALTH SOURCES, INC., LIAW, and HUTCHISON, | |
| Defendants. | |

OPINION AND ORDER

Charles Huntley is a prisoner who is proceeding in this case without a lawyer on three claims against three defendants all related to the medical care he received while in custody at the Westville Correctional Center. *See* ECF 27 and 41. The first claim is against Katharine Hutchison, a nurse in the facility, who is being sued in her individual capacity for compensatory and punitive damages under the Eighth Amendment for denying Huntley medical treatment relating to pain in his right hip and leg from October 29, 2017 to November 14, 2017. ECF 27 at 5. The second claim is against Dr. Andrew Liaw in his individual capacity for compensatory and punitive damages for denying medical treatment for the same issue from November 14, 2017 to March 7, 2018, and from June 5, 2018 to [August 29, 2018][1] also in violation of the Eighth Amendment. *Id.* at 5-6. Finally, Huntley brings a *Monell* claim against Wexford Health Sources for

---

[1] Huntley was transferred out of the Westville Correctional Facility on August 29, 2018, and was not under the medical care of Dr. Liaw thereafter. ECF 65 at 5.

compensatory and punitive damages for policies and practices which delayed and denied him medical treatment. *Id.* at 6.

The defendants now seek summary judgment which must be granted if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Not every dispute between the parties makes summary judgment inappropriate; "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id*. To determine whether a genuine issue of material fact exists, the court must construe all facts in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Ogden v. Atterholt*, 606 F.3d 355, 358 (7th Cir. 2010). However, a party opposing a properly supported summary judgment motion may not rely merely on allegations or denials in its own pleading, but rather must "marshal and present the court with the evidence she contends will prove her case." *Goodman v. Nat'l Sec. Agency, Inc.*, 621 F.3d 651, 654 (7th Cir. 2010). Summary judgment "is the put up or shut up moment in a lawsuit . . .." *Springer v. Durfiinger*, 518 F.3d 479, 484 (7th Cir. 2008).

Claim Against Nurse Hutchinson

Nurse Hutchison is alleged to have denied Huntley medical treatment for nerve pain and numbness in his right hip and leg from October 29, 2017 to November 14, 2017. For a medical professional to be held liable for deliberate indifference to a serious

medical need, she must make a decision that represents "such a substantial departure from accepted professional judgment, practice, or standards, as to demonstrate that the person responsible actually did not base the decision on such a judgment." *Jackson v. Kotter*, 541 F.3d 688, 697 (7th Cir. 2008).

It is undisputed that Huntley filed a health care request dated October 29, 2017, and another dated October 31, 2017. ECF 63-3 at 2 and ECF 65-1 at 3-4. It is undisputed that it is Nurse Hutchison's job to process health care requests when she receives them. ECF 63-3 at 1 and ECF 63-4 at 50 and 53. And it is also undisputed that Huntley did not give either of these health care requests directly to Nurse Hutchison; rather he gave them to someone on his unit to transmit to her. ECF 63-3 at 2-3 and ECF 65 at 10. So the issue is when did Nurse Hutchinson receive the request and did she act promptly once she did?

Nurse Hutchison swears to me that she did not receive Huntley's requests until November 15, 2017, and November 14, 2017, respectively. ECF 63-3 at 2. Huntley argues she received them much sooner than that but delayed processing them because she was deliberately indifferent to his serious medical needs. ECF 65 at 11. The problem for Huntley is that he has no evidence showing when Hutchinson received those requests. He points to how she promptly responded to other health care requests. *See* ECF 65-1 at 1-2. But that is not evidence of when she received these requests. He notes she wrote on one of these requests "11/14 via mail" to indicate when and how she received it, but she did not make similar notations on other requests. *See* ECF 65 at 11 and ECF 65-1 at 1-4.

3

However, there is no official place on the form to indicate when or how the request was received and inconsistent personal notations do not make this notation a disputed fact.

Huntley claims that when he was seen on November 14, 2017, Nurse Hutchison asked him, "how do [you] expect to receive treatment if [you] plan on suing . . .." ECF 63-4 at 55. But Huntley made no mention of suing in either of his health care requests, so it would not be plausible to infer that she saw his health care requests but delayed treatment because he threatened to sue. *See* ECF 65-1 at 3-4. Indeed, Huntley did not even mention filing a lawsuit in his request for interview filed November 12, 2017, his grievance filed November 12, 2017, nor his grievance appeal filed November 16, 2017. ECF 65-1 at 5-12. Therefore, the undisputed evidence is Nurse Hutchison received those two health care requests on November 14 and 15, 2017.

The undisputed evidence is Nurse Hutchison scheduled Huntley for a doctor's appointment on November 14, 2017, the same day she received one of those healthcare requests. ECF 63-2 at 3, ECF 63-3 at 3, ECF 63-5 at 61-63, and ECF 65 at 11. That request stated:

> Ever since I had that surgery where the doctor removed the bullet from my hip, I am experiencing a tingling feeling in my right leg down to my foot then it goes numb. It's like my leg feels like it's going to sleep then I can't feel it at all and when I touch it my leg feels cold. It stays like that for a while then I feel a pain, it hurts bad then I am able to feel my leg again but it's super sensitive when I touch it. I need to see a doctor.

ECF 65-1 at 4. Scheduling Huntley for a doctor's appointment the same day she saw his health care request was not deliberately indifferent. Quite the contrary, the evidence is

that Nurse Hutchinson acted with dispatch. It was certainly not a substantial departure from accepted professional judgment, practice, or standards.

The only other event Huntley mentions in support of his claim that Nurse Hutchison was deliberately indifferent is that "when defendant Hutchison did finally see Huntley on 11-14-2017 she still failed to conduct a vitals and weight check and record the results as it is procedure . . .." ECF 65 at 11. In her affidavit, Nurse Hutchison makes no mention of having weighed Huntley or taken his vitals on that day. *See* ECF 63-3. Neither is there any record of her having done so in her Provider Visit notes for that day. *See* ECF 63-5 at 60. Therefore, making all plausible inferences in Huntley's favor, the undisputed facts show she did not weigh him nor take his vitals on November 14, 2017. Though that might have been a violation of procedure, it did not deny him medical treatment for a serious medical need and did not constitute cruel and unusual punishment in violation of the Eighth Amendment.

Based on the undisputed evidence, no reasonable jury could return a verdict for Huntley on his claim against Nurse Hutchison. Thus, her motion for summary judgment will be granted.

## Claim Against Dr. Andrew Liaw

Dr. Liaw is alleged to have denied Huntley medical treatment for nerve pain and numbness in his right hip and leg from November 14, 2017 to March 7, 2018, and from

5

June 5, 2018 to August 29, 2018.[2] As with his prior claim against Nurse Hutchison, for a medical professional to be held liable for deliberate indifference to a serious medical need, he must make a decision that represents "such a substantial departure from accepted professional judgment, practice, or standards, as to demonstrate that the person responsible actually did not base the decision on such a judgment." *Jackson*, 541 F.3d at 697.

It is undisputed that Huntley was seen by Dr. Liaw on November 14, 2017. ECF 63-2 at 3, ECF 63-3 at 3, ECF 63-5 at 61-63, and ECF 65 at 11. In his affidavit, Dr. Liaw tells me that he "performed a thorough examination of the plaintiff's leg and questioned the plaintiff regarding his function." ECF 63-2 at 3. Huntley states, "[n]ot one time during this assessment did Defendant Liaw perform any type of examination that would indicate to him the amount of pain and numbness that the plaintiff was experiencing." ECF 65 at 3. In his affidavit, Huntley swears that on November 14, 2017, "I was not given . . . a standard physical examination . . .." ECF 65-1 at 14-15. This is a factual dispute. But not every dispute is material. Here, because of other undisputed facts, even if Dr. Liaw did not perform a physical examination on November 14, 2017, that alone is not a basis for finding that he was deliberately indifferent.

It is undisputed that Huntley described his pain, numbness, and other symptoms to Dr. Liaw on November 14, 2017. ECF 63-2 at 3, 63-4 at 56, and ECF 65 at 3. It is

---

[2] From March 8, 2018, to June 4, 2018, Huntley was under the care of Dr. Jackson and was not being treated by Dr. Liaw. ECF 63-2 at 4 and 6, ECF 63-5 at 108-10 and 172-74, and ECF 65 at 4-5.

6

undisputed that at that visit, Dr. Liaw ordered blood tests to identify the cause of Huntley's numbness. ECF 63-2 at 3, ECF 65 at 3, and ECF 65-1 at 14 and 19. It is undisputed that on November 14, 2017, Dr. Liaw offered Huntley a first-floor housing assignment to accommodate any difficulty he was having on stairs. ECF 63-2 at 3. It is undisputed that Dr. Liaw had previously examined Huntley on September 28, 2017, and October 13, 2017, as well as subsequently examining him on January 26, 2018, June 5, 2018, and August 17, 2018. ECF 65-3 at 2-7; ECF 65-5 at 16, 33, 84, and 172.

It is also undisputed that Dr. Liaw did not prescribe any pain medication on November 14, 2017. ECF 63-5 at 63 and ECF 65 at 3 and 12. Huntley disputes Dr. Liaw's statement that he prescribed Tylenol on January 26, 2018. ECF 63-2 at 4, ECF 63-5 at 84, and ECF 65 at 4. It is undisputed that on January 26, 2018, Dr. Liaw, "admitted to [Huntley that he] could not come up with a satisfactory explanation for his discomfort." ECF 63-5 at 84. It is undisputed Dr. Liaw then referred the case "to Dr. Jackson for a second opinion for this difficult case of pain/numbness . . .." *Id.*, *see also* ECF 63-2 at 4 and ECF 65 at 4. Dr. James Jackson unsuccessfully tried Cymbalta and Pamelor to control Huntley's pain. ECF 63-5 at 133 and 165, ECF 63-4 at 61-62. It is undisputed Dr. Jackson wrote on May 18, 2018, "There is really nothing else to give him for this neuropathic pain. Can take Tylenol . . .." ECF 63-5 at 156. Then on May 25, 2018, he wrote, "Limited treatment options due to psych med interactions." ECF 63-5 at 165. Huntley returned to Dr. Liaw for treatment on June 5, 2018. ECF 63-2 at 6, ECF 63-5 at 172-74, and ECF 65 at 5. It is undisputed Huntley told Dr. Liaw the Tylenol was not

working. *Id*. Huntley says Dr. Liaw cancelled the Tylenol, but Dr. Liaw says he did not. *Id*.

There are several disputes about whether or when Dr. Liaw prescribed or cancelled medications. What is undisputed is that none of those medications ever worked. It is true Dr. Liaw could have tried the medications prescribed by Dr. Jackson sooner, but it would not have mattered because none of them worked. It is undisputed that Huntley had been experiencing pain in his right leg since 2009 when he was shot. ECF 63-2 at 2 and ECF 63-4 at 26-30. There is no evidence that he has ever been prescribed any medication that was able to control his pain. That is certainly unfortunate, but not all pain can be controlled. "To say the Eighth Amendment requires prison doctors to keep an inmate pain-free in the aftermath of proper medical treatment would be absurd." *Snipes v. DeTella*, 95 F.3d 586, 592 (7th Cir. 1996). Such is the case here. Huntley had been in pain for years since he was shot in 2009. Dr. Liaw removed the bullet on September 29, 2017, in the hopes it would relieve his pain.[3] ECF 63-2 at 2, ECF 63-4 at 32 and 37-38, ECF 63-5 at 16. Sadly, his pain continued – although post-surgery – interrupted by intermittent numbness. ECF 65-1 at 4. Dr. Jackson noted, "with Dr. Liaw, [Huntley] felt his symptoms were being ignored-but, per chart review I see that this was not the case at all . . .." ECF 63-5 at 110.

Based on the totality of the undisputed facts, no reasonable jury could find Dr. Liaw was deliberately indifferent. There is no evidence in this record to show that his

---

[3] Huntley did not sue Dr. Liaw because of the way he performed surgery to remove the bullet. ECF 30, *see also* ECF 63-4 at 32.

8

medical judgments departed from accepted professional judgment, practice, or standards. To the contrary, the undisputed notation of Dr. Jackson is that Dr. Liaw acted appropriately. Huntley cannot prevail on his claim against Dr. Andrew Liaw. Thus, his motion for summary judgment will be granted.

Claim Against Wexford Health Sources

Wexford is alleged to have policies and practices which delayed and denied Huntley medical treatment for the nerve pain and numbness in his right hip and leg. A private company performing a state function can be held liable to the same extent as a municipal entity under *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658 (1978). *See Rice v. Corr. Med. Servs.*, 675 F.3d 650, 675 (7th Cir. 2012) (holding *Monell* framework applies to private company providing medical care at correctional facility). But, a corporation "cannot be held liable under § 1983 on a respondeat superior theory." *Calhoun v. Ramsey*, 408 F.3d 375, 379 (7th Cir. 2005). Rather, corporate liability exists only "when execution of a [corporation's] policy or custom . . . inflicts the injury." *Id*.

Here, Huntley has not identified any policy or custom which prevented him from receiving medical treatment. Indeed, the record shows that Huntley received an abundance of medical care during the time in question. That is why it is unsurprising to see that when asked in his deposition if he knew of a policy to prevent him from receiving care, Huntley answered, "Not at this time I do not have any policy, no." ECF 63-4 at 36. In his response to the summary judgment motion, Huntley has not identified any policy of custom which prevented him from receiving medical treatment. *See* ECF

65. The undisputed evidence is that, "At no time has Wexford of Indiana, LLC encouraged or directed [Dr. Liaw] to deny care for monetary reasons." ECF 63-2 at 9.

Based on the undisputed evidence, no reasonable jury could return a verdict for Huntley on his claim against Wexford Health Sources. Thus, its motion for summary judgment will be granted.

## Conclusion

For these reasons, the motion for summary judgment (ECF 62) is GRANTED. The clerk is DIRECTED to enter judgment in favor of the defendants and against Charles Huntley.

SO ORDERED on February 19, 2020.

/s/ Philip P. Simon
PHILIP P. SIMON, JUDGE
UNITED STATES DISTRICT COURT